UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BERNARD MASSE,                    :
         Plaintiff,               :
                                  :
      v.                          :        CA 10-134 M
                                  :
COMMISSIONER OF SOCIAL SECURITY,  :
         Defendant.               :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

      This matter is before the Court on the request of Plaintiff
Bernard Masse ("Plaintiff") for judicial review of the decision of
the Commissioner of Social Security ("the Commissioner"), denying
Supplemental Security Income ("SSI") benefits, under §§ 205(g) and
1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§
405(g) and 1383(c)(3) ("the Act").  Plaintiff has filed a motion to
reverse the decision of the Commissioner.  Defendant Michael J.
Astrue ("Defendant") has filed a motion for an order affirming the
Commissioner's decision.

      This matter has been referred to me for preliminary review,
findings, and recommended disposition pursuant to 28 U.S.C. §
636(b)(1)(B).  I find that the Commissioner's determination that
Plaintiff is not disabled is supported by substantial evidence in
the record and is legally correct.  Accordingly, for the reasons set
forth herein, I recommend that Defendant's Motion for an Order
Affirming the Decision of the Commissioner (Docket ("Dkt.") #13)

("Motion to Affirm") be granted and that Plaintiff's Motion to Reverse the Decision of the Commissioner of Social Security (Dkt. #9) be denied.

## Facts and Travel

Plaintiff was born in 1963 and was forty-three years old on the date he filed his application. (Record ("R.") at 12, 115, 123) He obtained a GED, (R. at 27), and has past relevant work experience as a laborer and roofer, (R. at 12, 22-23, 128, 157, 175).

Plaintiff filed an application for SSI on June 7, 2007, alleging disability beginning May 1, 2004, due to status post fractures of both ankles with open reduction internal fixation ("ORIF"), rotator cuff tendonitis, chronic obstructive pulmonary disease ("COPD"), and Hepatitis C.[1] (R. at 24-25, 115, 123, 127) His application was denied initially and on reconsideration, (R. at 7, 60-61, 64-66, 68-70), and a request for a hearing before an administrative law judge ("ALJ") was timely filed, (R. at 7, 71). A hearing was conducted on November 10, 2009, at which Plaintiff,

---

[1] Plaintiff alleged in the Disability Report - Adult filed in conjunction with his application that the illnesses, injuries, or conditions which limited his ability to work were: "Orthopedic problems with right ankle/ back problem/ broken jaw/missing teeth/problems speaking due to assault injury and missing teeth." (R. at 127) At the November 10, 2009, hearing, Plaintiff's counsel agreed that the claim was for orthopedic problems. (R. at 22) Plaintiff stated that he "fell off [a] roof and -- four flights down." (R. at 24) He further stated that he shattered his shoulder in the fall, that he had an operation on his knee to remove cartilage, and that he had COPD, Hepatitis C, and tendonitis in his elbow. (R. at 25)

represented by counsel, appeared and testified. (R. at 7, 19) An impartial medical expert ("ME") and vocational expert ("VE") also testified. (Id.) In a decision dated December 8, 2009, the ALJ found that Plaintiff was not disabled, as defined by the Act, at any time since June 7, 2007. (R. at 7-14) The Decision Review Board selected Plaintiff's claim for review, (R. at 4), and on March 10, 2010, affirmed the ALJ's decision, (R. at 1), thereby rendering that decision the final decision of the Commissioner, (id.). Thereafter, Plaintiff filed this action for judicial review.

## Issue

The issue for determination is whether substantial evidence in the record supports the decision of the Commissioner that Plaintiff was not disabled within the meaning of the Act since the date his application was filed.

## Standard of Review

The Court's role in reviewing the Commissioner's decision is limited. Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999). Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial evidence in the record,[2] are conclusive. Id. (citing 42 U.S.C. § 405(g)). The

---

[2] The Supreme Court has defined substantial evidence as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206 (1938)); see also

determination of substantiality is based upon an evaluation of the record as a whole. Id. at 30 (citing Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1999)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)).   The Court does not reinterpret the evidence or substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Rodriquez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420 (1971))).

**Law**

An individual is eligible to receive SSI if he is aged, blind, or disabled and meets certain income requirements. See 42 U.S.C. § 1382(a). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. 423(d)(1)(A).  A claimant's impairment must be of such severity

Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I. 1992).

that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 416.929(a) (2010).

The Social Security regulations prescribe a five step inquiry for use in determining whether a claimant is disabled. See 20 C.F.R. § 416.920(a) (2010); see also Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001). Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy. See 20 C.F.R. § 416.920(b)-(g). The evaluation may be terminated at any step. See Seavey v. Barnhart, 276 F.3d at 4. "The applicant has the burden of production and proof at the first four steps of the process. If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the

applicant can still perform." <u>Freeman v. Barnhart</u>, 274 F.3d 606, 608 (1st Cir. 2001).

## ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since June 7, 2007, the date of his application, (R. at 9); that Plaintiff's status post fractures of both ankles and ORIF, rotator cuff tendonitis, COPD, hepatitis C virus, and alcohol abuse in partial remission, when considered in combination, were severe, (<u>id.</u>); that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, (<u>id.</u>); that Plaintiff had the residual functional capacity ("RFC") to perform light work[3] except that he was limited to occasional climbing of ramps, stairs, ropes, ladders, and scaffolds, occasional balancing, kneeling, crouching, and crawling, and frequent stooping, was limited in the right

---

[3] Light work

involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. ...

20 C.F.R. § 416.967(b) (2010).

6

shoulder to no overhead reaching, and was to avoid concentrated exposure to hazards; (R. at 10); that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they conflicted with the clinical findings and medical opinions of record, (R. at 12); that Plaintiff was unable to perform his past relevant work, (id.); that, considering Plaintiff's age, education, work experience, and RFC, he was able to perform jobs which existed in significant numbers in the national economy, (R. at 13); and that, therefore, Plaintiff had not been under a disability, as defined in the Act, since June 7, 2007, the date his application was filed, (id.).

## Errors Claimed

Reading Plaintiff's memorandum[4] generously, Plaintiff alleges that: (1) the ALJ's finding that he did not have an impairment or combination of impairments which met or medically equaled a listed

_____

[4] Plaintiff['']s Memorandum of Law ("Plaintiff's Mem.") fails to comply with the District of Rhode Island Local Rules ("DRI LR") in three respects. First, it is not double-spaced. See DRI LR Cv 5(a)(3) ("Unless otherwise provided or ordered by the Court, all documents shall be double-spaced and typed in at least 12-point font."). Second, the pages are not numbered. See id. ("Where a document is more than one page in length, the pages shall be numbered at the bottom center of each page."). Third, and most significant, Plaintiff's Mem. lacks citations to the administrative record. See DRI LR Cv 7(d)(4) ("Any memorandum filed in a case involving an appeal from the ruling or determination of an administrative tribunal, including but not limited to Social Security disability determinations, shall include all pertinent citations to the administrative record.").

impairment is erroneous; (2) the ALJ's RFC finding is erroneous; and (3) the ALJ's credibility finding is erroneous.

## Discussion

### I.  The ALJ's finding that Plaintiff did not have an impairment or combination of impairments which met or medically equaled a listing

The ALJ found that Plaintiff's impairments, either singly or in combination, did not meet or equal a listed impairment. (R. at 9)  The ALJ noted that none of Plaintiff's treating or examining sources had opined that Plaintiff's impairments met or equaled a Listing, nor had the ME.  (R. at 10)  Plaintiff "argues that he does have an impairment or a combination of impairments that meet[s] or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ...."  Plaintiff['']s Memorandum of Law ("Plaintiff's Mem.") at 2.[5]

#### A.  Ankle pain

The ALJ stated that:

I have evaluated the claimant's ankle pain generally under the Listings[] and specifically as it relate[s] to Listing 1.02 (major dysfunction of a joint).  I do not find that the claimant's residual effects of ORIF surgery, bilaterally, meets or equals Listing 1.02 because the objective evidence does not demonstrate that the claimant's ability to ambulate effectively has been compromised.

(R. at 10)  Plaintiff argues that "the residual effects of the ORIF surgery, bilaterally does meet or medically equals [sic] Listing

_____

[5] As the pages of Plaintiff's Mem. are not numbered, see n.4, the Court has performed this function.

1[.,]02 because the objective evidence demonstrates that the claimant's ability to ambulate effectively has been compromised." Plaintiff's Mem. at 2.

The problem with Plaintiff's argument is that he provides no evidence which "demonstrates that [his] ability to ambulate effectively has been compromised,"[6] id., nor has the Court found any in its review of the record. Plaintiff told his primary care provider at Thundermist, Nancy E. Castro, NP, on December 13, 2006, that he walked daily for exercise, (R. at 607), and it was noted on January 4, 2007, and December 19, 2007, that he was still walking on a daily basis, (R. at 614, 616).

Although Plaintiff alleged in the Disability Report - Adult and Function Report - Adult filed in conjunction with his application that he "cannot walk well due to a previous ankle injury from falling off a roof ... I still have problems walking," (R. at 127), and that his "[b]roken ankle affected [his] ability to walk," (R. at 135), the Disability Determination Services ("DDS") doctor who reviewed the record found Plaintiff's claim that he could not walk or stand at all without having to rest, (R. at 136), "not credible and ... inconsistent with [consultative examination] findings ...," (R. at 539). Further, the DDS reviewer found

---

[6] It is Plaintiff's burden to produce evidence that his condition meets the criteria of a listed impairment. See Mills v. Apfel, 244 F.3d 1, 6 (1st Cir. 2001); see also 20 C.F.R. § 416.925(d) (2010) (noting that an impairment cannot meet the criteria of a listing based only on a diagnosis but, rather, must satisfy all of the criteria of the listing).

Plaintiff's alleged use "from time to time [of] crutches, cane, and brace/splint," (R. at 136), to be unsupported. The only other mention of assistive devices in the record occurs in the context of a fall off a ladder in October of 2008, when Plaintiff was diagnosed with a right knee sprain and contusion and fitted for a knee immobilizer and crutches. (R. at 546-50) Further, Plaintiff testified that he did not use crutches. (R. at 33)

### B. Right upper extremity tendonitis and shoulder pain

The ALJ

> also considered [L]isting 1.02B (dysfunction of a joint) as it pertains to the claimant's right upper extremity tendonitis and shoulder pain. I do not find that these conditions meet or medically equal Listing 1.02B primarily because the Listing requires involvement of one major peripheral joint in *each* upper extremity, and the claimant's impairment involves only the right upper extremity.

(R. at 10) Plaintiff contends that he meets or medically equals Listing 1.02B because "he has pain in all of his major peripheral joints in both his left and right upper extremity." Plaintiff's Mem. at 2.

On one occasion, October 27, 2009, Plaintiff told his treating source at Thundermist that he had "joint pain all over." (R. at 630) However, there is no evidence of any treatment for Plaintiff's alleged joint pain. (R. at 630-31). Joint pain is not listed under "Assessment" or "Plan," (id.), presumably indicating that no treatment was contemplated for Plaintiff's alleged joint pain. Moreover, at the November 10, 2009, hearing Plaintiff

10

testified to limitations only on his right side. (R. at 42-45) In fact, he stated that his left arm was "normal." (R. at 45)

## C. Hepatitis C

According to the ALJ:

> I do not find that the claimant's hepatitis C virus[] meets or medically equals Listing 5.05 (chronic liver disease) because the record does not contain any clinical findings with regard to viral load levels by which to [assess] the severity of the claimant's condition. Moreover, as noted by [the ME], it is unclear whether the claimant is receiving any treatment for hepatitis.

(R. at 10) Plaintiff asserts, without citing any evidence, that he equals the Listing because "he has been receiving treatment for hepatitis c." Plaintiff's Mem. at 2.

On December 19, 2007, Nurse Castro noted that hepatitis C was a "new diagnosis[.]" (R. at 616) She referred Plaintiff to a Dr. Chowdhry. (R. at 617) Thereafter, the record from Thundermist jumps to October 13, 2009. (R. at 627) Plaintiff's hepatitis C was listed under his past medical history, and it was noted that Nurse Castro was awaiting the result of pending lab testing. (Id.) Two weeks later, Nurse Castro indicated that she was "referring [Plaintiff] to [L]inda [D]urand[.]" (R. at 631) However, there are no records from either Dr. Chowdhry or Linda Durand, and, as the ALJ stated, there is no evidence in the record—and Plaintiff has pointed to none—indicating that Plaintiff received treatment for his hepatitis C. Additionally, the ME testified that it was unclear from the record whether or not Plaintiff was receiving

treatment for hepatitis C.  (R. at 31)

**D.    COPD**

The ALJ stated that:

I do not find that the claimant's COPD meets or medically
equals a listing.  I do not find that the claimant's COPD
meets or medically equals Listing 3.02 (chronic pulmonary
insufficiency) because his pulmonary functioning does not
meet the agency specified values.  Moreover, the record
does not indicate deficient arterial blood gas levels, or
frequent attacks.

(R. at 10)  Plaintiff maintains that his COPD meets or medically
equals Listing 3.02 because his pulmonary functioning meets the
agency specified values, he has deficient arterial blood gas
levels, and he has frequent attacks.  See Plaintiff's Mem. at 2.

Again, however, Plaintiff fails to cite any evidence which
contradicts the ALJ's finding.  The ME simply mentioned COPD once.
(R. at 31)  Jay Burstein, M.D., who examined Plaintiff at the
request of DDS on September 11, 2008, did not list COPD among
Plaintiff's diagnoses.  (R. at 520)  Plaintiff's testimony and
Nurse Castro's records reflect that the only regular treatment
Plaintiff received for his COPD was inhalers.  (R. at 39-40, 617,
627, 630-31)  He was also advised to decrease smoking.[7]  (R. at
615, 630)

**E.    Summary**

Plaintiff fails to point to any evidence in the record which

_____

[7] Plaintiff told Nurse Castro in October of 2009 that he smoked
between 11-20 cigarettes per day and that he smoked his first cigarette
within five minutes after waking up.  (R. at 627, 630)

12

supports his claim that the above impairments meet or medically equal a listed impairment and that the ALJ's finding that they do not is erroneous.  Accordingly, Plaintiff's first claim of error should be rejected.  I so recommend.

## II.  **The ALJ's RFC finding**

As noted above, the ALJ found that Plaintiff retained the RFC for light work, except that he was limited to occasional climbing of ramps, stairs, ropes, ladders, and scaffolds, occasional balancing, kneeling, crouching, and crawling, frequent stooping, and no overhead reaching on the right side.  (R. at 10)  Plaintiff was also to avoid concentrated exposure to hazards.  (Id.) Plaintiff asserts that he does not have the RFC to perform light work.  See Plaintiff's Mem. at 2.

Again, Plaintiff fails to cite to any medical evidence which would indicate that he is incapable of performing light work.[8]  See

---

[8] The ALJ noted Plaintiff's hearing testimony and summarized it as follows:

> The claimant alleges that he is unable to perform work related activities on a sustained and continuous basis, due to a combination of physical impairments.  The claimant testified that he fell off of a roof, several years ago, and shattered his shoulder, injured his knee, and fractured both ankles. He continues to have pain in those areas.  The claimant also alleges trouble breathing, due to COPD, tendonitis of the right elbow/shoulder, daily nosebleeds, Hepatitis C virus, and residual [e]ffects of a jaw fracture.  The claimant testified that he has been sober from alcohol for approximately six months.  Functionally, the claimant stated that he has difficulty moving his right ankle from side to side due to pain.  His right knee, where he had some cartilage removed, gets stiff, and he occasionally experiences pain.  The claimant testified that walking even short distances is

id. The ALJ, by contrast, relied on the opinions of the consultative examiner, Dr. Burstein,[9] the DDS reviewing doctor, Erik P. Purins, M.D.,[10] and the ME, Edward Spindell, M.D.[11] (R. at

　　　　bothersome because he must catch his breath. Additionally, he
　　　　cannot lift more than a gallon of milk due to tendonitis in
　　　　his right upper extremity. He experiences pain and weakness.
　　　　He stated that he could lift 20 pounds with his left arm, but
　　　　not 10 pounds repeatedly with his right. He experiences
　　　　headaches and facial numbness from a displaced jaw. The
　　　　claimant also testified to experiencing constant nausea, and
　　　　vomiting two times per day.

(R. at 11)(internal citation omitted). The ALJ, however, found that
"[t]he longitudinal medical evidence does not support the level of
disabling impairments alleged by the claimant." (R. at 11); see also
Discussion section III. infra at 15-19.

　　[9] Dr. Burstein stated that "the examinee is limited to overhead and
repetitive activities involving his right shoulder and upper extremity,"
(R. at 520); that "[h]e is limited to lifting no greater than 10-15
pounds on a frequent regular basis," (R. at 521); and that "[h]e is able
to stand and walk," (id.).

　　[10] In a Physical Residual Functional Assessment dated September 26,
2008, Dr. Purins found that Plaintiff could: occasionally lift 20 pounds;
frequently lift 10 pounds; stand and/or walk, with normal breaks, for a
total of at least 2 hours in an 8-hour workday; sit, with normal breaks,
for a total of about 6 hours in an 8-hour workday; and push and/or pull
on an unlimited basis. (R. at 538) Dr. Purins further stated that
Plaintiff was limited to standing/walking for 4 hours in an 8-hour
workday, (id.), and that Plaintiff's right shoulder should be limited to
no overhead reaching due to limited range of motion and pain, (R. at
540), but no other manipulative limitations were present, (id.). In
terms of postural limitations, Dr. Purins indicated that Plaintiff was
able to frequently stoop and occasionally climb ramps, stairs, ladders,
ropes, and scaffolds, balance, kneel, crouch, and crawl. (R. at 539)
The doctor noted that Plaintiff should avoid concentrated exposure to
hazards such as machinery or heights due to the fact that he was less
agile, but no other environmental limitations were listed. (R. at 541)
No visual or communicative limitations were established. (R. at 540-41)
Dr. Purins' assessment was affirmed by Edward Hanna, M.D., on April 16,
2009. (R. at 590)

　　[11] Based on his review of the orthopedic records, Dr. Spindell
testified regarding Plaintiff's physical exertional level that "[i]t
would appear that he's capable of activities of a light nature, being
intermittently on his feet six out of eight hours, and lifting 20 pounds

12)    The ALJ noted that "Dr. Burstein opined that the claimant could lift 10-15 pounds frequently, and was limited with overhead and repetitive activities involving his right shoulder and upper extremity," (id.)(internal citation omitted), and stated that:

> I have accorded great weight to the opinion of Dr. Burstein, whose assessment of the claimant's residual functional capacity was also relied upon by the State Disability Examiner, Erik Purins, M.D. I find that these assessments, based on examining and reviewing physicians[,] are consistent with the record and consistent with the medical opinion of Dr. Spindell, the medical expert who testified at the claimant's hearing, after reviewing the entire record and listening to the claimant's testimony.

(R. at 12)(internal citations omitted).

Based on the foregoing, the Court finds that the ALJ's RFC determination is supported by substantial evidence. Accordingly, Plaintiff's second claim of error should be rejected. I so recommend.

### III. The ALJ's credibility finding

The ALJ found that, although Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they conflicted with the clinical findings and medical opinions which the ALJ had summarized at length. (R. at 12) Plaintiff contends that after careful consideration of all

occasionally, 10 pounds frequently. He would be limited with overhead reaching with his ... right shoulder." (R. at 33)

of the evidence, his "medically determinable impairment[s] could reasonably be expected to ... cause his symptoms." Plaintiff's Mem. at 2-3. Presumably Plaintiff intends to argue that the latter portion of the ALJ's credibility finding, i.e., that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible, is erroneous. Plaintiff asserts that the longitudinal medical record supports the level of "disabling impairments" alleged. Plaintiff's Mem. at 2.

An ALJ is required to investigate "all avenues presented that relate to subjective complaints ...." <u>Avery v. Sec'y of Health & Human Servs.</u>, 797 F.2d 19, 28 (1st Cir. 1986). In addition, "whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *2 (S.S.A.). When assessing the credibility of an individual's statements, the ALJ must consider, in addition to the objective medical evidence, the following factors:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3; <u>see also</u> <u>Avery</u>, 797 F.2d at 29 (listing factors relevant to symptoms, such as pain, to be considered); 20 C.F.R. § 416.929(c)(3) (2010) (same). The ALJ's credibility finding is generally entitled to deference, especially when supported by specific findings. <u>Frustaglia v. Sec'y of Health & Human Servs.</u>, 829 F.2d 192, 195 (1st Cir. 1987)(citing <u>DaRosa v. Sec'y of Health & Human Servs.</u>, 803 F.2d 24, 26 (1st Cir. 1986)); <u>see also</u> <u>Yongo v. INS</u>, 355 F.3d 27, 32 (1st Cir. 2004)("[T]he ALJ, like any fact-finder who hears the witnesses, gets a lot of deference on credibility judgments."); <u>Suarez v. Sec'y of Health & Human Servs.</u>, 740 F.2d 1 (1st Cir. 1984)(stating that ALJ is "empowered to make credibility determinations ..."); <u>cf.</u> <u>Becker v. Sec'y of Health & Human Servs.</u>, 895 F.2d 34, 36 (1st Cir. 1990)("A reviewing court must treat the agency's factual conclusion with considerable respect ....").

The ALJ first summarized Plaintiff's hearing testimony. (R. at 11) The ALJ next stated that "[t]he longitudinal medical evidence does not support the level of disabling impairments

alleged by the claimant," (id.), and outlined the medical evidence of record, (id.). The ALJ explained his reasons for his credibility finding as follows:

> The claimant's testimony at the hearing was vague and evasive at times, giving the impression that he was being less than totally candid. He indicated that he fell off a roof approximately three years ago. The records indicate that the incident in which he sustained the ankle injuries was in 2003. Further, the claimant testified that he was laid off in 2005, and continued to look for work, sometimes doing "odd jobs." This raises the question of whether the claimant's work activity ceased for disability related reasons, and whether the claimant was able to work after his alleged onset date.[12] Moreover, notes from the Field Office indicated that the claimant has not complied with his obligations during the application and appeals process. He has not completed forms properly, and submitted an ineligible medication list. Additionally, the claimant failed to appear at two scheduled consultative examinations, raising questions as to the severity of his mental impairments.

(R. at 12)(internal citations omitted).

Clearly the ALJ complied with the regulation and ruling requiring that he give reasons for his credibility finding. He focused on Plaintiff's testimony and demeanor at the hearing, inconsistencies between Plaintiff's testimony and the evidence of record, and Plaintiff's noncompliance with agency procedures. It

---

[12] Plaintiff testified that he had not worked since falling off a roof, (R. at 11, 24), which happened in December of 2003. (R. at 29-30) Yet, on August 2, 2007, when Plaintiff was brought by rescue to Landmark Medical Center in an intoxicated condition, he told medical personnel: "I got paid today and had a few beers." (R. at 429) While Plaintiff also testified that he was "really bad with dates," (R. at 29), he reaffirmed that he had "never worked," (id.), after being injured in the fall, (id.), and did so after being apprised that the fall had occurred in December 2003, (id.).

is not the Court's role to second-guess the ALJ.  See Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1ˢᵗ Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."); see also Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1ˢᵗ Cir. 1991)("It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence."); Brown v. Apfel, 71 F.Supp.2d 28, 30-31 (D.R.I. 1999) ("[T]his Court must avoid reinterpreting the evidence or otherwise substituting its own judgment for that of the Commissioner.").

Moreover, Plaintiff was questioned at the November 10, 2009, hearing regarding the required factors.  (R. at 26-27, 34-46); see also Frustaglia, 829 F.2d at 195 ("The ALJ thoroughly questioned the claimant regarding his daily activities, functional restrictions, medication, prior work record, and frequency and duration of the pain in conformity with the guidelines set out in Avery regarding the evaluation of subjective symptoms.")(internal citation omitted).  Accordingly, this Magistrate Judge finds no reason to disturb the ALJ's credibility finding.  I therefore recommend that Plaintiff's final claim of error be rejected.

## Summary

The Court finds the ALJ's conclusion that Plaintiff was not

19

disabled since June 7, 2007, the date his application was filed, to be supported by substantial evidence in the record and legally correct. In particular, Plaintiff has not provided evidence that the ALJ's finding that Plaintiff's impairments, either singly or in combination, did not meet or equal a listed impairment, is erroneous. The ALJ's finding that Plaintiff retained the RFC to perform light work, with certain restrictions, is supported by substantial evidence. Finally, the ALJ properly found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical evidence of record.

**Conclusion**

The Court finds that the ALJ's determination that Plaintiff was not disabled since June 7, 2007, the date his application was filed, is supported by substantial evidence in the record and is legally correct. I therefore recommend that Defendant's Motion to Affirm be granted and that Plaintiff's Motion to Reverse be denied.

Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision. <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor</u>

Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
June 24, 2011